IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| LOCKLEAR ELECTRIC, INC., an Illinois corporation, individually and as the representative of a class of similarly-situated persons, | ) ) ) ) | No. 09-531-MJR |
| | ) | |
| Plaintiff, | ) | Judge Michael J. Reagan |
| v. | ) ) | |
| NORMA L. LAY, as Executor of the Estate of THEODORE LAY, | ) ) | |
| Defendant. | ) | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT
OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

Plaintiff, Locklear Electric, Inc. ("Plaintiff"), on behalf of itself and the class of similarly-situated persons ("Settlement Class"), requests that the Court enter an order finally approving the parties' Settlement Agreement (the "Settlement" or the "Agreement"), and finally approving the form of Class Notice and its method of dissemination to the Settlement Class. The parties' proposed Order is attached hereto as <u>Exhibit A</u> and will be submitted to the Court in electronic format.

The Court preliminarily approved the Settlement on June 7, 2010. (Doc. 53). After that, Plaintiff caused the class notice to be mailed to the absent Class Members in accordance with the Court's June 7 order. (Doc. 53 at ¶ 7). In response, only two class members requested exclusion. *See* Declaration of Phillip A. Bock, attached hereto as <u>Exhibit B</u>. No class member objected to the settlement. <u>Exhibit B</u>. Final Approval is appropriate for the reasons set forth in Plaintiff's Motion for Preliminary approval and because the Class members support the

settlement.

I. **Preliminary approval and dissemination of notice.**

On May 27, 2010, the Court held a hearing to consider Plaintiff's Motion for Preliminary Approval of Class Action Settlement and Notice. After consideration of the Settlement Agreement and plan of notice, the Court entered an order of preliminary approval on June 7, 2010. (Doc. 53).

In accordance with the June 7 Order, Plaintiff mailed the notice to the Class. *See* Declaration of Ronald Simmons, attached as Exhibit 1 to <u>Exhibit B</u>. Only two members of the settlement class requested exclusion and no class member has objected to final approval. <u>Exhibit B</u>.

II. **Background and summary of settlement.**

Plaintiff's complaint alleges that Defendant faxed unsolicited advertisements to Plaintiff and the Settlement Class in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA"), the Illinois Consumer Fraud & Deceptive Practices Act, 815 ILCS 505/1, *et seq.*, and the common law of conversion.

Plaintiff and Defendant reached an agreement to settle this case on a class-wide basis after reviewing and analyzing the legal and factual issues presented in this action, the risks and expenses involved in pursuing the litigation to conclusion, the likelihood of a damage award in excess of that negotiated in this settlement, the protracted nature of the litigation, and the likelihood, costs, and possible outcomes of one or more procedural and substantive appeals. Given Defendant's inability to pay except through its insurance policies, Plaintiff's attorneys believe the

settlement is fair, reasonable, and adequate for the Class.

The key terms of the Settlement are as follows:

(a)   <u>Class certification</u>.  As reflected in the June 7 Order, the parties stipulated to, and this Court preliminarily approved, the certification of a settlement class, pursuant to Fed. R. Civ. P. 23, defined as "All persons who between June 1, 2006 and June 30, 2006 were sent faxes by or on behalf of the 'Ted Lay Real Estate Agency' advertising the commercial availability of a 'Large, Moneymaking Carwash' for sale south of Springfield, Illinois." (the "Settlement Class").  (Doc. 53 at ¶ 2).  Defendant's advertisements were sent by fax to the 3,478 persons in the class during the period of June 1, 2006 through June 30, 2006.  *See* Expert Report of Robert Biggerstaff (without its voluminous exhibits), attached as <u>Exhibit B</u>.

(b)   <u>Relief to Plaintiff and the Class</u>.  Defendant has agreed to allow a judgment to be entered against it, and in favor of the Class (represented by Plaintiff and its attorneys), in the total amount of $1,737,500.00, collectible only from Defendant's insurer and Defendant's insurance policies.  Defendant has assigned to the Class all of its rights under those insurance policies.

Plaintiff and the Class will seek to recover the judgment from the insurer (Standard Mutual) through further litigation, including the case styled as *Standard Mutual Ins. Co. v. Theodore Lay*, 09 MR 32, Macoupin County, Illinois.  As reflected in the parties' proposed final approval order, if subsequent litigation against Defendant's insurer results in a recovery, each

Class member (excluding the two persons who opted out from this case after receiving the class notice and excluding the fax broadcaster) will be issued a check for their pro rata share of the recovery.

(c)  <u>Attorney's fees and costs and incentive award</u>.  Plaintiff's attorneys would be paid from the recovery against the insurer, if any.  The parties have agreed, and Plaintiff requests that the Court approve, that Plaintiff's attorneys would receive attorney's fees equal to one-third of the recovery from the insurer, plus out-of-pocket costs and expenses.  Plaintiff would receive $9,500 as an incentive payment for its efforts on behalf of the Class.

(d)  <u>Remainder to charity</u>.  Any money remaining after all approved payments shall be paid to charities approved by the Court.

## III.  The Court should finally approve the settlement.

### A.  Standard for judicial evaluation and approval.

A court should approve a settlement if the settlement "is fair, reasonable, and adequate."  Fed. R. Civ. P. 23 (e) (1) (C).  *See Synfuel Technologies, Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 652 (7th Cir. 2006); *DHL v. Thoroughbred Technology + Telecom.*, 309 F.3d 978, 986 (7th Cir. 2002).  It is well-established that there is an overriding public interest in settling and quieting litigation, and this is particularly true in class actions.  *See Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation.").

**B.    Factors to be considered in determining whether a settlement is fair, reasonable, and adequate.**

The factors considered are:  (1) the strength of the plaintiff's case on the merits compared to the amount of the settlement; (2) the defendant's ability to pay; (3) the likely complexity, length and expense of further litigation; (4) opposition to the settlement from members of the class; (5) evidence of collusion; (6) opinions of counsel; (7) the stage of the proceedings and the amount of discovery completed at the time of settlement; and (8) the public interest.  *Isby v. Bayh*, 75 F. 3d 1191, 1198-1199 (7th Cir. 1996).  Here, these factors show the settlement should be approved.

**1.    Strength on the merits compared to the settlement amount.**

The parties agree that—after subtracting the two persons who opted out and the broadcaster who faxed a copy to itself—the class includes the 3,475 persons to whom Defendant's unsolicited advertisements were faxed.  *See* Expert Report of Robert Biggerstaff, attached as <u>Exhibit C</u> (without voluminous exhibits).

The merits of the case is strong.  Defendant hired a third-party fax broadcaster to send Defendant's advertisements by fax to a giant database maintained by the third-party.  Plaintiff has recovered evidence showing the successful transmission of Defendant's advertisements by fax.  <u>Exhibit C</u>.  Other courts have certified contested Rule 23 classes based on the same evidence, the same fax broadcaster, and the same expert analysis.  *Targin Sign Sys., Inc. v. Preferred Chiropractic Center, Ltd.*, 679 F. Supp. 2d 894 (N.D. Ill. 2010); *CE Design Ltd. v. Cy's Crabhouse*, No. 07 C 5456, 2009 WL 2252261 (N.D. Ill. July 27, 2009);

*G.M. Sign, Inc. v. Finish Thompson, Inc.*, No. 07 CV 5953, 2009 WL 1810769 (N.D. Ill. June 22, 2009).

A finding of Defendant's liability to the Class under the TCPA, with statutory damages of $1,500 per fax, would result in a maximum damage award of $5,217,000.00.  Defendant did not intend to injure the fax recipients and believed the recipients had consented to receive faxes.  *See* Affidavit of Judith Bivin, attached as <u>Exhibit D</u>.  But the TCPA is a strict liability statute.  *See, e.g., Universal Underwriters Ins. Co. v. Lou Fusz Automotive Network, Inc.,* 401 F.3d 876, 882 (8th Cir. 2005) ("[I]ntent is not a prerequisite to liability under the [TCPA]."); *Park Univ. Enters., Inc. v. Am. Cas. Co. of Reading, PA.,* 314 F. Supp. 2d 1094, 1103 (D. Kan.2004) ("The TCPA is essentially a strict liability statute-even if Park erroneously faxed advertisements to recipients with whom it did not have an existing business relationship, Park may be held liable under the TCPA for its actions (albeit without treble damages"). Therefore, it is almost certain that a judgment in the Class's favor would total $1,737,500.00 ($500 x 3,475 persons (after subtracting three persons)).  Such a judgment would far exceed Defendant's non-insurance assets.  Given Defendant's inability to pay any judgment from anything other than its insurance assets, this is a reasonable compromise of the Class's claims.

>   **2.     Defendant's ability to pay.**

As one of Defendant's attorneys confirmed during the preliminary approval hearing, Defendant cannot pay a potential judgment except through its insurance

assets.  Defendant would have to file for bankruptcy if the Class were to pursue collection of a money judgment against Defendant.  As an unsecured judgment creditor, the Class would likely recover less than the costs and expenses of litigating their claims in bankruptcy.  Defendant purchased insurance policies covering the relevant time period.  That insurance provides a source from which the Class can obtain compensation for their claims against Defendant.

Defendant Theodore Lay promptly tendered the defense of this action to his insurer, Standard Mutual Insurance Company ("Standard Mutual"), pursuant to a commercial general liability insurance policy (No. CGL 09158794) Standard Mutual had issued to Theodore Lay covering the period November 28, 2005 to November 28, 2006, and a primary business owner's liability insurance policy (No. BOP 0918695 04) Standard Mutual had issued to Theodore Lay covering the period September 10, 2005 to September 10, 2006.

Standard Mutual issued a reservation of rights letter and filed suit in state court seeking to void the policies and avoid coverage for defense and indemnity of this lawsuit.  *Standard Mutual Ins. Co. v. Theodore Lay*, 09 MR 32 (Macoupin County, Illinois) (the "Declaratory Judgment Action").  Exhibit E is the current complaint in that case.  That court has not decided any of the merits of the insurance coverage issues.

While this action was pending, Theodore Lay died.  After an estate was opened in Macoupin County, Illinois Letters of Office were issued to Norma L. Lay on October 1, 2009.  On December 9, 2009, this Court granted Plaintiff's Unopposed

Rule 25(a) Motion to Substitute Party Defendant and "Norma L. Lay as Executor of the Estate of Theodore Lay" was substituted for defendant Theodore Lay (deceased). (Doc. 32).  Standard Mutual has amended the complaint in the Declaratory Judgment Action to name as defendants "Norma Lay, individually and as Executor of the Estate of Theodore W. Lay, doing business as Ted Lay Real Estate Agency, and Locklear Electric, Inc."

### 3.    The costs of further litigation.

Because Defendant's insurance policies are the only practical source for the satisfaction of any judgment in the Class's favor, it is in the Class's best interests to avoid future litigation costs that do not relate to proving coverage for their claims. Further litigation of their underlying claims against Defendant in this Court, on appeal, or in bankruptcy will be expensive for the Class and will not move them closer to collecting any money.  On the other hand, if this action is settled, the Class can concentrate the efforts on resolving the insurance coverage issues that will ultimately determine what, if any, money can be recovered for the Class.  The Court should finally approve the settlement because the settlement will minimize the inevitable costs of future litigation of this matter.

### 4.    Opposition.

There is no opposition to this settlement, and only two Class Members have requested exclusion.  Exhibit B.  The lack of opposition and requests for exclusion shows that the Class Members have a favorable reaction to the settlement that supports final approval.

5.      **Absence of collusion.**

The settlement is not the product of collusion.  The parties reached this Agreement only after considering (1) the benefits to the Class, (2) the fact that Defendant has demonstrated insufficient assets to provide class wide relief except from its insurance, (3) the evidence of liability in the case, (4) the risks, costs, uncertainties, and delays of litigation, (5) Defendant's limited financial resources, and (6) the coverage defenses of Standard Mutual and its declaratory action seeking to void Defendant's insurance coverage.  Plaintiff and its counsel have concluded that the terms and conditions provided for in this Agreement are fair, reasonable, adequate, and in the best interests of the Class as a means of resolving this litigation.

6.      **Opinion of counsel.**

Class Counsel believes this settlement is fair, reasonable, and adequate. Class Counsel has litigated TCPA class actions and the coverage issues arising in these actions since 2003.  *See, e.g.*, *Valley Forge v. Swiderski*, 860 N.E.2d 307 (Ill. 2006); *Insurance Corp of Hanover v. Shelborne Assoc.*, 905 N.E.2d 976 (Ill. App. Ct. 2009); *Eclipse Mfg. Co. v. U.S. Compliance Co.*, 886 N.E.2d 349 (Ill. App. Ct. 2007). Under these circumstances, Class Counsel's opinion should be given great weight because of Class Counsel's extensive experiences in dealing with the myriad and complex issues involved in this case.

7.      **Stage of proceedings and amount of discovery.**

The stage of proceedings and amount of discovery supports preliminary approval.  The parties have determined that the class includes approximately 3,478

persons to whom Defendant faxed unsolicited advertisements during the relevant time period.  Exhibit C.  The members of the Class have been identified already by Plaintiff's expert, through his analysis of the faxing records obtained from the fax broadcaster.  With the discovery already obtained, there is a high likelihood Plaintiff has enough evidence such that this Court would certify a class and enter summary judgment in favor of the Class.

### 8.   Public interest.

The public interest is best served by ending this case now even though coverage issues will have to be litigated before the amount of relief available to the Class can be determined.  Based upon the foregoing, as well as upon the judgment of experienced class counsel, Plaintiffs request that the Court approve the proposed settlement.

## IV.   The Court should finally approve the notice.

In compliance with the Court's June 7 preliminary approval order, Plaintiff caused the approved class notice to be mailed to the Class members on June 8, 2010.  Exhibit B.  Rule 23(e)(1) requires, "The court must direct notice in a reasonable manner to all class members who would be bound by the proposal."  Under federal law, notice of the settlement must satisfy due process.  *Maher v. Zapata Corp.*, 714 F. 2d 436, 450-453 (5th Cir. 1983); *Walsh v. Great Atlantic & Pacific Tea Co.*, 726 F. 2d 956, 963 (3d Cir. 1983).  The Court is vested with wide discretion both as to the manner in which notice is given and the form that notice is to take.  7B Charles Alan Wright et al., FEDERAL PRACTICE AND PROCEDURE § 1797.6 (3d ed. 2005).

Here, pursuant to the Court's instructions at the May 27, 2010 hearing and its preliminary approval order, the notice was mailed to the Class Members. Exhibit B.  Direct mail is a reasonable manner of notifying class members.

Additionally, the content complied with the notice required for a contested class. Rule 23 (c)(2)(B) (notice "must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23 (c) (3).").  Here, the content of the class notice stated all those things.  Exhibit B, Ex. 1.

In conclusion, the Notice met the legal standards for appropriate notice and satisfied Rule 23.  Therefore, the Court should find that the notice complied with the Rules and Due Process.

**V.      Attorneys' fees from a future recovery are appropriate.**

Class Counsel will not receive any fees unless and until they successfully prosecute the Class's claims against Defendant's insurer.  They request that the Court authorize them to be paid one-third of the recovery they accomplish from Defendant's insurer.  Class Counsel have prosecuted this case on an "at-risk" contingent fee basis and will pursue recovery from the insurer on the same basis.

Courts have long recognized that the attorneys' contingent risk is an

important factor in determining the fee award.  *See Florin v. Nationsbank of Georgia, N.A.*, 34 F.3d 560, 565 (7th Cir. 1994); *Gaskill v. Gordon*, 160 F.3d 361, 363 (7th Cir. 1998).  It is well-settled that the attorneys who create a benefit for class members are entitled to compensation for their services.  *Boeing Co. v. Van Gemert,* 444 U.S. 472, 478 (1980); *Morris B. Chapman & Assoc. v. Kitzman*, 193 Ill. 2d 560, 572-73 (2000).  "When a class suit produces a fund for the class, it is commonplace to award the lawyers for the class a percentage of the fund."  *Gaskill v. Gordon*, 160 F.3d 361 (7th Cir. 1998) (affirming award of 38% of $20 million), and citing *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984).  *See also Brundidge v. Glendale Federal Bank, F.S.B.*, 168 Ill. 2d 235, 238 (1995) ("[O]ne who 'creates, preserves, or increases the value of a fund in which others have an ownership interest to be reimbursed from that fund for litigation expenses incurred, including counsel fees.'").

The market for legal services paid on a contingency basis shows the proper percentage to apply in a class action that creates a common fund for the benefit of the class.  *In re Continental Illinois Securities Litig.*, 962 F.2d 566, 572 (7th Cir. 1992).  Where lawyers working on a contingency basis in the relevant community typically charge one-third of any recovery to a private client, this shows that a similar fee is appropriate in a contingency class action.  *Id.; see also* ALBA CONTE & HERBERT B. NEWBERG, NEWBERG ON CLASS ACTIONS, § 13:80 (4th ed. Updated June 2008); *First Interstate Bank of Nevada, N.A. v. National Republic Bank of Chicago,* No. 80 C 6401 (N.D. Ill. Feb. 12, 1988) (Plunkett, J.) (39% fee); *Gaskill v. Gordon*, 942 F. Supp. 382 (N.D. Ill. Sept. 30, 1996) (Williams, J.), *aff'd,* 160 F.3d 361 (7th

Cir. 1998) (receivership case) (38% fee); *In re Nuveen Fund Lit.*, No. 94 C 360 (N.D. Ill. June 3, 1997) (Manning, J.) (33.3% fee); *In re Soybean Futures Lit.*, No. 89 C 7009 (N.D. Ill. Nov. 27, 1996) (Norgle, J.)(33.3% fee); *Liebhard v. Square D Co.,* No. 91 C 1103 (N.D. Ill. Jun. 6, 1993) (Plunkett, J.)(33.3% fee); *Goldsmith v. Technology Solutions, Co.*, 1995 U.S. Dist. LEXIS 15093 (N.D. Ill. Oct. 10, 1995) (Guzman, J.)(33.3% fee); *Hammond v. Hendrickson*, No. 85 C 9829 (N.D. Ill. Nov. 20, 1992) (Aspen, J.)(33.3% fee); *In re Caremark International Sec. Lit.*, No. 94 C 4751 (N.D. Ill. Dec. 15, 1997) (Plunkett, J.)(33% fee).

Here, if the Court approves the Settlement, Class Counsel would recover fees only from a recovery against Defendant's insurer (Standard Mutual). Class Counsel have spent time litigating this case, and now will continue litigating against Standard Mututal to recover the judgment under Defendant's insurance policies on a contingency fee basis. Class Counsel are experienced TCPA litigators and have litigated insurance coverage regarding TCPA claims many times. *See, e.g. Valley Forge Ins. v. Swiderski Electronics, Inc.*, 860 N.E.2d 307 (Ill. 2006) (Plaintiff's counsel successfully argued for insurance coverage of TCPA claims); *Insurance Corp. of Hanover v. Shelborne Associates*, 905 N.E.2d 976 (Ill. App. Ct. 2009) (Plaintiff's counsel successfully arguing for property damage coverage of claims about advertising faxes); *Eclipse Manufacturing Co. v. U.S. Compliance Co.*, 886 N.E.2d 349 (Ill. App. Ct. 2007) (Plaintiff's counsel representing class and judgment affirmed against insurer requiring payment of consent judgment in TCPA case); *American Home v. McLeod*, 475 F. Supp. 2d 766 (N.D. Ill. 2007) (Kennelly, J.)

13

(Plaintiff's counsel successfully argued for insurance coverage for claims in pending class action).

## VI.   A future incentive payment to Plaintiff is appropriate.

If the Settlement is approved, Plaintiff would receive $9,500 to from the recovery from Defendant's insurer as an incentive payment for services on behalf of the Class.  Courts routinely award such "incentive payments" to the persons who assume the special litigation burden of class representative and thereby benefit the entire class.  *See Cook v. Niedert,* 142 F.3d 1004, 1016 (7th Cir. 1998) (affirming $25,000 incentive award to class representative because "a named plaintiff is an essential ingredient of any class action, [and] an incentive award is appropriate if it is necessary to induce an individual to participate in the suit"); *In re Dun & Bradstreet Credit Services Customer Litigation*, 130 F.R.D. 366, 367 (S.D. Ohio 1990) (approving two incentive awards of $55,000 and three of $35,000 to five representatives).

Class action suits conserve judicial and litigant resources.  *GMAC,* 236 Ill. App. 3d at 497, *citing* C. Krislov, Scrutiny of the Bounty: Incentive Awards for Plaintiffs in Class Litigation, 78 Ill. B.J. 286 (June 1990).  Class representatives assume the burdens of litigation that absent Class members do not shoulder and do so without promise of a reward and with the risk that the litigation may not succeed.  The class representative in this case was no exception.  But for Plaintiff's initiative the benefits available to all class members would not have been realized. The Court should approve Plaintiff's future incentive payment.

## VII.   Conclusion.

WHEREFORE, plaintiff Locklear Electric, Inc. respectfully requests that this

Court enter a final approval order in the form attached as Exhibit 1 to the

Agreement and submitted herewith as <u>Exhibit A</u>.

Respectfully submitted,


<u>/s Phillip A. Bock</u>
Class Counsel

Robert J. Sprague                   Phillip A. Bock
SPRAGUE & URBAN                     Tod A. Lewis
26 East Washington Street           BOCK & HATCH, LLC.
Belleville, IL 62220                134 N. La Salle Street, Suite 1000
Telephon: 618/233-8383              Chicago, IL 60602
                                    Telephone:  312/658-5500
Brian J. Wanca
Ryan M. Kelly
ANDERSON + WANCA
3701 Algonquin Road, Suite 760
Rolling Meadows, IL  60008
Telephone:  847/368-1500

## CERTIFICATE OF SERVICE

I hereby certify that, on September 4, 2010, I electronically filed the foregoing *Plaintiff's Memorandum in Support of Final Approval of Class Action Settlement* (with attachments) with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all attorneys who have appeared in this matter:

**For Defendant:**

Edmond H. Rees
Brandenburg-Rees & Rees
Macoupin County
128 South Broad
P.O. Box 556
Carlinville, IL 62626
217-854-2602
ehr@reeslawyers.com

James R. Mendillo
Shane M. Moskop
Freeark, Harvey et al.
115 West Washington Street
P.O. Box 546
Belleville, IL 62222-0546
618-233-2686
jmendillo@freeark.com

**For Plaintiff:**

Robert J. Sprague
Sprague & Urban
26 East Washington Street
Belleville, IL 62220-2101
618-233-8383
rsprague@cbnstl.com

Ryan M. Kelly
Anderson & Wanca
3701 Algonquin Rd., Suite 760
Rolling Meadows, IL 60008
847-368-1500
rkelly@andersonwanca.com

/s  Phillip A. Bock
Phillip A. Bock